**In re PRUDHOMME.**

No. 5173.

District Court, W. D. Louisiana, Shreveport Division.

April 2, 1938.

Harold Moses, of New Orleans, La., and W. W. Heard, of Lake Charles, La., for petitioning creditors.

E. S. Prudhomme, of Natchitoches, La., for debtor.

C. T. Munholland, of Monroe, La., supervising conciliation commissioner.

DAWKINS, District Judge.

The nature and circumstances of this case are fully and correctly stated in the

report of the Supervising Conciliation Commissioner, which is approved and adopted as the conclusion and finding of this court:

"This proceeding was instituted under Section 75 of the Bankruptcy Act as amended [11 U.S.C.A. § 203], on December 2, 1933. The proceeding was referred by the Court to Harper F. Willis, Conciliation Commissioner in and for the Parish of Natchitoches, Louisiana, for proceedings under Section 75. The applicant in the proceeding is admittedly a lawyer but alleged in his application that he was primarily engaged in farming operations and derived his principal source of income therefrom.

"The debtor scheduled assets consisting of 203 acres of farm property which was given a scheduled value of $15,160 and in addition thereto a law library of the scheduled value of $500. Proofs filed before the Conciliation Commissioner reflect an indebtedness of $5,231.11 to Federal Land Bank on February 3rd, 1934, and a debt of $10,000 due to the sisters of the bankrupt, Misses Emmerline, Eulalie and Lillian Prudhomme. The Commissioner received proofs on the two debts mentioned and in addition a proof of L. M. Peters for Clerk's hire amounting to $150.

"By judgment of this court, dated June 20th, 1934, the claim of $10,000 of the said Misses Emmerline, Eulalie and Lillian Prudhomme, was held to be insufficiently proven and referred back to the Commissioner for further testimony and proof. The record does not disclose that such additional proof was ever offered to the Commissioner and so far as I am able to determine the claim was never allowed.

"Subsequently and on the 8th day of October, 1935, the debtor was adjudged bankrupt under Subsection (s) of Section 75 [11 U.S.C.A. § 203(s)] and on February 15, 1936, a meeting was held before Harper F. Willis, Conciliation Commissioner, for the purpose of fixing the annual rental and a memorandum of the fixing is part of the record but for convenience copied herein as follows:

" 'Memorandum for File.
" 'In re: E. St. Anne Prudhomme, Natchitoches Parish, Louisiana. Loan No. 47573.
" 'Rental fixed by agreement between Bank and E. S. Prudhomme, Attorney for E. St. Anne Prudhomme on Saturday February 15, 1936, before Harper F. Willis, Conciliation Commissioner, at Natchitoches, La. on the following basis:

| Crop | Acreage to be Cultivated | Average Yield Per acre |
|---|---|---|
| Cotton | 60 acres | 2/5 bale |
| Corn | 32 acres | 12 bu. |
| Hay | 4 acres | 1–½ ton. |

| Average Total Yield | Average Val. Per Unit | Av. Gr. Val. | Rental |
|---|---|---|---|
| 24 Bales | $60.00 | $1440.00 | (¼ on |
| 384 bu. | .70 | 268.80 | cotton |
| 6 tons | $10.00 | 60.00 | and corn |
| | | | ½ on hay) |

Rental:
$360.00
  67.20
  30.00
———
$457.20
Total rent payable after harvest of 1936 crops.

" 'The above rental has not yet been confirmed by the District Court; also, the rental was fixed with reservation of the rights of the Bank to be heard on petition to dismiss the case which is fixed for February 28, 1936 at Natchitoches, La.
" 'W. W. Heard, Attorney.
" 'Approved: Harper F. Willis,
Conciliation Commissioner.'

"Due to the ambiguity of the foregoing statement of rentals, the ambiguity being as to whether it was contemplated that a cash rental or a portion of the crop in kind be considered as rental, this matter was re-opened before Arthur C. Watson, successor to Harper F. Willis, as Conciliation Commissioner for Natchitoches Parish, and a rental of $457.20 was fixed for the year 1936 on a cash basis. The rental actually paid into the hands of the Commissioner for the year 1936 amounted to $119, and for the year 1937 it appears from the answer filed by the debtor in connection with the application to dismiss, same having been filed on February 2, 1938, that a total revenue was received by the debtor from the farm property in the sum of $164.31 though the debtor did not pay the amount into the hands of the Commissioner. To the contrary, he claims that he has made certain repairs on the farm property at a total cost of $185, none of which was authorized by the court.

From the record of the Conciliation Commissioner it appears that only $2.45 was paid into his hands by the debtor for the year 1937.

"The testimony clearly shows that for the years 1936 and 1937 and for some years preceding that the debtor has obtained a minimum of $1,000 per annum from the practice of law. His own testimony is to the effect that he received between $1,000 and $1,500 per annum. During the period that his proceeding has been pending under Section 75 nothing has been paid to creditors or deposited in the hands of the Commissioner for distribution except the $2.45 for the year 1937 and the sum of $119 for the year 1936.

"Annexed to the supplemental application of Federal Land Bank to dismiss this proceeding filed herein on December 22, 1937, is a certified copy of a contract entered into between the debtor and one Henry Johnson whereunder the debtor agreed to sell to the said Henry Johnson all of the farm property for a recited consideration of $10,150. It was agreed that this sum should be paid in equal annual installments of $600, beginning October 1st, 1938 through the year 1947, and that when the sum of $6,000 shall have been paid a deed would be executed to the proposed purchaser. Although the debtor is a practicing attorney at law and has represented numerous debtors applying for relief under Section 75 of the Bankruptcy Act in the Parish of Natchitoches, he obtained no authority whatever from the court to enter into a contract to sell the property.

"The application of the Federal Land Bank to dismiss this proceeding is on the following basis:

"(1). That the debtor is not a farmer within the meaning of Section 75.

"(2). That the debtor has failed to pay the annual rental as provided under Section 75.

"(3). That there is no possibility of the debtor rehabilitating himself.

"(4). That the debtor has not conducted his proceedings in good faith.

"(5). That by entering into the contract to sell the property he has abandoned the right to proceed under Section 75.

"Federal Land Bank prays for disclaimer of the property mortgaged to it and dismissal of the proceeding. Trial of the application was held before me on February 28, 1936. At that time considerable evidence was taken for the purpose of showing that the debtor has failed to comply with an order of this Court requiring accounting of crops harvested by him for the crop year 1935. I am unable to say that the debtor did not make an accounting in compliance with the order for the reason that Harper Willis, then Conciliation Commissioner, was at that time away from his office in Natchitoches, Louisiana, and from the mouth of the debtor, it would appear that an accounting was filed with Mr. Willis and the presumption was that it was left in his office.

"The testimony at that hearing further showed that the farm property should normally have forty acres planted in cotton under Government control and sixty acres without Government control; that the property should produce twenty-four bales of cotton per annum which should have an average value of $60 per bale or $1,440 for the cotton crop per annum. On a one-fourth basis there should be the sum of $360 payable to the debtor by share croppers who operate the property. It was further estimated that there should be an average corn crop of approximately $260, the debtor's one-fourth of which should amount to a minimum of $60 per annum. In addition certain revenues should be derived from the sale of hay and other crops on the property and it would seem that the normal income from the property should be, according to the expert testimony produced by Federal Land Bank, approximately the sum of $450. Actual income from the property for the year 1934 was a gross of thirteen bales of cotton, of which the debtor received one-fourth and in addition thereto the Government benefits from rental and parity payments gave the debtor as his portion of the crop $290.95. As aforesaid, none of this money was paid to the creditors or even applied by the debtor to the payment of taxes, either for the year 1934 or the year 1935. Furthermore, the debtor only paid $119 for the year 1936. He states that for the year 1937 that he used the money for making repairs. As hereinabove pointed out, no authority was given for that purpose. I do not believe that the debtor could contend that he thought he had authority in view of the provisions of the statute and in view of the attitude of Federal Land Bank which consistently insisted that the debtor pay into the Court and account to the Court for revenues derived from the farm property. Furthermore, by his testi-

mony the debtor filed a motion praying for authority to make the repairs, which authority was not granted. Certainly he would not have made application for authority to make the repairs or to spend money on the farm property unless he thought such authority was needed.

## "The Farmer Status of the Debtor.

"I find as a fact and report to the Court that the debtor does not derive his principal source of income from nor is he primarily engaged in farming operations.

## "Rental.

"The record clearly shows that the rental for the year 1936 was fixed by the Commissioner in the amount of $457.20 and for the year 1937 in the amount of $450. I find as a fact that rental paid by the debtor for the year 1936 was $119 and for the year 1937 the sum of $2.45, and consequently that rental for each of the years named has not been paid into the Court.

## "Rehabilitation of the Debtor.

"A statement of indebtedness due Federal Land Bank as of February 5, 1938, which was filed in evidence at the hearing and is made part of this report reflects that the debtor incurred the indebtedness with the Federal Land Bank on November 15, 1924; that uniformly he was delinquent in paying his annual installments to the Bank and finally stopped paying altogether in 1929; that the last payment was made for the sum of $45 on May 29th, 1929; that since that time the debtor has paid nothing on the Bank's debt; that for the years 1932, 1933, 1934 and 1935 the Bank has been called on to pay taxes assessed against the property in order to protect their mortgage interests. I conclude that the record history of the debtor's ability to rehabilitate himself shows an utter impossibility in this regard in the event he expects the farm property to accomplish rehabilitation. I find that under the admitted testimony of the debtor the farm property has been poorly cultivated and has greatly depreciated in value due to obnoxious grasses and general deterioration of the improvements on the farm property.

## "Good Faith of the Debtor.

"In view of the fact that the debtor has seen fit to make repairs, contract for the sale of the property and generally to manage his affairs without authority of the Court and beyond the consent and advice of his creditors, I find that he is legally in bad faith.

## "Contract to Sell.

"In addition to the findings set forth in the preceding paragraph, it appears to me that the debtor has by contract divested himself of the right to proceed under Section 75 for the reason that he has entered into a contract to sell the property and hence has lost the right of possession and administration thereof under the supervision and control of the Court.

## "Conclusions.

"I respectfully submit that the application of Federal Land Bank should be sustained and that the proceeding should be dismissed on the ground that the debtor is not a farmer within the meaning of Section 75, and so recommend.

"Alternatively, I recommend that a Trustee should be appointed and the estate wound up in accordance with the provisions of subsection (s) of Section 75, as amended, for the reasons:

"(1) The debtor has failed to pay the annual rental fixed,

"(2) There is no possibility of rehabilitation of the debtor as contemplated by Section 75,

"(3) The debtor has not conducted his proceedings in good faith as required by Section 75,

"(4) The debtor has entered into a contract to sell the farm property which has divested him of the right to further proceed under Section 75.

"And I so recommend."

While I agree with the Supervising Conciliation Commissioner that the record discloses the debtor to be primarily engaged in the practice of law and that he derives his principal income from that source, this issue should have been raised several years ago instead of allowing it to proceed for more than four years and until after the debtor had been adjudged a bankrupt under subsection (s) of Section 75 of the Bankruptcy Law, 11 U.S.C.A. § 203(s). My view is that a trustee should be appointed and the estate wound up, as provided by this section of the statute, for the alternative reasons suggested by the Commissioner. Notwithstanding the fact that Prudhomme is a lawyer and has represented numerous other debtors in similar proceedings, he has made no serious at-

tempt to comply, in good faith, with many of the provisions of the statute, and has appeared to take the position that after filing his application and getting it approved by the court he could sit down and do nothing, leaving it to the creditors to initiate action, which he has uniformly opposed. It was not a matter for him to decide as to the rental and how it should be paid, but this was determined and fixed by the Conciliation Commissioner, as the statute requires, from which no review by the court was sought, and he cannot now complain and seek to evade the consequences of his own acts in the manner attempted. I am also of the view that there has been an utter lack of good faith on his part throughout. He failed to make any pretense of keeping any record or furnishing any definite information from which his creditors could reasonably determine the condition of his affairs, and he has utterly ignored any accounting for the major portion of his business, to-wit, the law practice. When he invoked relief under Section 75 of the Act, 11 U.S.C.A. § 203, this placed him and all of his property and business under the supervision of the court.

Proper decree, in accordance with these views, should be presented.